**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CRYSTAL KAY ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| *v.* | ) | Case No. CIV-24-1144-PRW |
| | ) | |
| ORRKLAHOMA EAST, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant Orrklahoma East's Motion for Partial Summary Judgment (Dkt. 22). This matter has been fully briefed and is ripe for decision. For the reasons that follow, Defendant's Motion for Partial Summary Judgment (Dkt. 22) is **GRANTED.**

***Background***

The following is a summary of the material facts. Where a fact is disputed, that dispute is noted.

***The parties and the job.*** This employment discrimination action arises out of Plaintiff Crystal Kay Alexander's employment with Defendant Orrklahoma East, LLC, which does business as Orr Nissan. ("Orr" or just "Defendant"). Orr Nissan is a car dealership that sells new and used cars.[1] Plaintiff Crystal Kay Alexander began at-will

[1] Mot. for Partial Summ. J. (Dkt. 22), at 7, ¶ 1.

employment on or about February 12, 2020, as a commission-based Sales Team Member.[2] She had no prior car sales experience.[3]

***Policies and training.*** On the day she was hired, Plaintiff signed an acknowledgment that company documents, including the handbook and policies, could be accessed electronically, that she had been given access instructions, and that annual online training was mandatory. No one forced her to sign it.[4] Plaintiff received a login for electronic access to these documents, logged in, saw HR policies, and completed training and annual modules.[5]

The Orr handbook states that the company is an equal-opportunity employer and prohibits sex discrimination, prohibits harassment including sexual harassment, and has an open-door process directing an employee first to the supervisor and then to the General Manager, Comptroller, or a confidential report to Human Resources, without retaliation for a good-faith report.[6] Plaintiff signed the No Harassment Policy acknowledgment, including the requirement of an immediate report.[7]

---

[2] *Id.* at 7, ¶ 6.

[3] *Id.* at 8, ¶ 7.

[4] *Id.* at 8, ¶ 11; Pl.'s Dep. (Dkt. 22-2), at 93:19–95:23.

[5] Mot. for Partial Summ. J. (Dkt. 22), at 8, ¶¶ 12–13; Employee Handbook (Dkt. 22-8), at 2, 9.

[6] Mot. for Partial Summ. J. (Dkt. 22), at 9, ¶¶ 14–18.

[7] *Id.* at 9, ¶ 19.

The handbook FMLA policy provides up to twelve weeks of leave, including for the employee's serious health condition, defined to include inpatient care or continuing care by a licensed provider, and states that foreseeable leave requires thirty days' notice and that the employee must give HR verbal or written notice.[8]

***Diverted sales***. While working as a salesperson, much of Plaintiff's work involved generating and handling so-called "sales leads," i.e., customers who were interested in buying cars. Some sales leads were generated "on the lot," by approaching potential buyers walking up to the store, while others were generated through phone, email, and internet communications.[9] The latter were typically funneled through Orr's Business Development Center ("BDC"), which used a database to assign leads to the salesperson who first established the relationship with the lead.[10] The BDC was staffed with two female employees.[11] Each salesperson earned commissions when they sold a vehicle.[12] Plaintiff alleges she was paid under a pay plan of $150 per unit.[13]

---

[8] *Id.* at 9, ¶ 20; Employee Handbook (Dkt. 22-8), at 3–7.

[9] Mot. for Partial Summ. J. (Dkt. 22), at 7, ¶¶ 2–3.

[10] *Id.* at 7, ¶¶ 2-3, 5; Pl.'s Dep. (Dkt. 22-2), at 79:9–20.

[11] Mot. for Partial Summ. J. (Dkt. 22) at 7, ¶ 4; Pl.'s Dep. (Dkt. 22-2), at 77:9–22.

[12] Mot. for Partial Summ. J. (Dkt. 22), at 7, ¶ 6.

[13] Pl.'s Resps. to Interrogs. (Dkt. 22-7), at 20, Interrog. No. 8.

Plaintiff alleges that the female BDC employees, who were women, diverted her leads to male salesperson in exchange for kickbacks from those male salespeople.[14] Plaintiff acknowledges that male counterparts also had their leads diverted pursuant to this kickback scheme.[15] She also claims that males salespeople sometimes "stole" her leads, separate and apart from the BDC kickback scheme.[16] She claims lost wages of $48,960 for 2020–2023 from lost sales and bonuses.[17]

Plaintiff does not contend that Orr managers instructed BDC employees to divert her leads.[18] She claims, however, that when she complained about the female BDC employees diverting her leads and other stolen leads, Orr management did nothing to stop the diversions. She claims that when her male counterparts complained about the BDC kickback scheme to management, their complaints were addressed.[19]

Plaintiff acknowledges that the BDC diversions were financially motivated.[20] Defendant also points to market conditions that it says caused a sales slowdown in the relevant period and which it says explains Plaintiff's diminished sales.[21]

---

[14] Pl.'s Dep. (Dkt. 22-2), at 167:18–171:13.

[15] *Id.* at 170:10–24.

[16] Pl.'s Aff. (Dkt. 33-14), at 1, ¶ 7.

[17] Pl.'s Resps. to Interrogs. (Dkt. 22-7), at 20, Interrog. No. 8.

[18] Pl.'s Dep. (Dkt. 22-2), at 168:24–169:5.

[19] *Id.* at 170:24–171:13.

[20] *Id.* at 170:4–9.

[21] Mot. for Partial Summ. J. (Dkt. 22), at 8, ¶¶ 8–9.

***Complaints.*** Plaintiff contends she made a verbal complaint of sex discrimination and harassment to the HR representative Nicole Stevens in early 2022.[22] Then on June 24, 2023, she filed a HR incident report asserting sex discrimination and harassment.[23] Defendant does not dispute that this incident was protected activity. In response to interrogatories, Plaintiff also alleges that she made earlier oral complaints and text message about diverted customers, beginning July 31, 2020.[24]

***Alleged sex-based treatment.*** Plaintiff sold her first vehicle on February 22, 2020, ten days after being hired.[25] Plaintiff alleges she was kept off the sales floor until she passed certain Nissan exams, while a male salesperson was allowed on the floor and with customers before passing his exam.[26]

Plaintiff alleges she was assigned non-sales tasks not given to male new hires and that she was the only salesperson ordered to cover reception because "no one wants to hear a man answer the phones."[27]

---

[22] Pl.'s Resps. to Interrogs. (Dkt. 22-7), at 4–17, Interrog. Nos. 1, 3–4.

[23] Incident Report (Dkt. 22-12).

[24] Pl.'s Resps. to Interrogs. (Dkt. 22-7), at 6–13, Interrog. No. 2.

[25] *Id.*

[26] *Id.*

[27] *Id.*

Plaintiff alleges that on June 23, 2023, after she complained to a supervisor about a diverted lead, she was screamed at in front of customers and told she could pack her things and get out.[28]

***December 22 leave.*** Plaintiff contends that in late December 2022, she had RSV, a respiratory condition with COVID-like symptoms, and that she gave notice to Orr by way of a December 30, 2022 doctor's note and by text to an Orr employee. She says she was never told FMLA might apply. Plaintiff has not alleged that the RSV required inpatient care, more than one visit to the doctor, or a regimen of continuing treatment, She has also not presented evidence that she lost pay, was disciplined, denied leave, or otherwise was harmed by the alleged failure of Defendant to tell her that her illness might be covered by FMLA.

***October 2023 transfer.*** Aaron Mount became General Manager of Orr Nissan on or about April 1, 2023, and was Plaintiff's direct supervisor until she moved to Service Advisor.[29] In October 2023, Mount offered Plaintiff a Service Advisor, or "Title Service Advisor," position, which he says he offered because it is customer-facing and Plaintiff's customer-service skills were above average. Mount says he did not force, coerce, or require Plaintiff to accept the transfer.[30]

---

[28] *Id.*

[29] Mount Aff. (Dkt. 22-3), at 1, ¶¶ 3–4.

[30] *Id.* at 2, ¶¶ 9–10.

Plaintiff accepted the transfer around October 17, 2023.[31] In a response to a request for admission, Plaintiff unqualifiedly admitted that she voluntarily accepted the transfer.[32] Plaintiff also acknowledges that Mount never said he would fire her if she refused. In subsequent responses to interrogatories and in deposition testimony, Plaintiff qualified her admission that she voluntarily accepted the transfer by claiming that she felt pressured to accept the transfer.[33]

Plaintiff remains employed as a Service Advisor.[34] She contends the positions differs from her sales position in a material way: sales had team support, recognition, two days off, and a flexible schedule, while service lacks team support, requires her to work six days a week, offers little recognition, and forces her to deal with unhappy customers.[35]

***Plaintiff's claims.*** In her Amended Complaint, Plaintiff brings claims under Title VII for sex-discrimination, sexual harassment, and retaliation. Plaintiff also brings claims under the FMLA for interference with her FMLA rights. Defendant filed this Motion for Partial Summary Judgment, as to Plaintiff's sex-discrimination, retaliation, and FMLA

---

[31] Mot. for Partial Summ. J. (Dkt. 22), at 11, ¶ 28.

[32] *Id.*; Pl's Resps. to Reqs. for Admiss. (Dkt. 22-13), at 5, Req. No. 5.

[33] Pl.'s Resps. to Interrogs. (Dkt. 22-7), at 21–22, Interrog. No. 16; Pl.'s Dep. (Dkt. 22-2), at 351:6–352:7.

[34] Mot. for Partial Summ. J. (Dkt. 22), at 11, ¶ 30; Pl's Resps. to Reqs. for Admiss. (Dkt. 22-13), at 5, Req. No. 4.

[35] Pl.'s Aff. (Dkt. 33-14), at 2–3, ¶¶ 12–15.

interference claims. Defendant has not moved for summary judgment on Plaintiff's sexual harassment claim.

## ***Legal Standard***

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, the Court views all facts and reasonable inferences in the light most favorable to the nonmovant.[36] Courts are not to weigh the evidence and determine the truth of the matter, but instead are to determine only whether there is a genuine dispute for trial before the fact-finder.[37] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[38] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue for either party.[39]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter

---

[36] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted).

[37] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[38] *Id.* at 248.

[39] *Id.*

of law."[40] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[41] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[42]

## ***Discussion***

### I. Plaintiff's Sex Discrimination Claim

Title VII of the Civil Rights Act of 1964 prohibits sex discrimination in employment decisions.[43] Where a plaintiff relies on circumstantial evidence of discrimination, as is the case here, the *McDonnell Douglas Corp. v. Green* framework governs.[44]

The burden starts with the plaintiff, who must present a prima facie case of discrimination. A prima facie case of sex-based discrimination is established through

---

[40] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of reh'g* (Jan. 23, 2003) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

[41] *Id.*

[42] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (citing *Anderson*, 477 U.S. at 248).

[43] 42 U.S.C. § 2000e-2(a)(1).

[44] 411 U.S. 792 (1973).

evidence that: (1) the employee belongs to a protected class; (2) the employee suffered an adverse employment action; and (3) the circumstances give rise to an inference of discrimination.[45] An adverse action requires some harm respecting an identifiable term or condition of employment.[46] The action must have left her worse off, but it need not have left her significantly so.[47] The plaintiff must then come forward with evidence from which a reasonable jury could infer that the adverse employment was taken because of plaintiff's sex.

If that hurdle is cleared, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action.[48] If such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason is pretextual[49]—that is, that the proffered reasons are so "incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief."[50]

**A. Plaintiff's Prima Facie Case**

---

[45] *Tabor v. Hilti*, 703 F.3d 1206, 1216–17 (10th Cir. 2013) (internal quotations and citations omitted).

[46] *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).

[47] *Id.*

[48] *Tabor,* 703 F.3d at 1216–17.

[49] *Id.*

[50] *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

Defendant primarily argues that Plaintiff cannot show that she suffered an adverse employment action under circumstances that could reasonably give rise to an inference of discrimination.

Plaintiff alleges that she suffered an adverse employment action primarily in two ways: (1) sales leads were diverted from her and she lost sales commissions when female BDC employees funneled her sales leads to male salespeople in exchange for kickbacks and that management failed to stop the BDC employees from doing so; and (2) she was transferred to a less preferable job in the service department. Plaintiff also alleges that male salespeople were generally treated better than her.

As for the transfer, Defendant argues that because Plaintiff was "offered"[51] the position and "voluntarily accepted" it,[52] it cannot constitute an adverse employment action.[53] Plaintiff's admission that she "voluntarily accepted" the transfer—which she has not withdrawn—controls over her later attempt to qualify that admission in her deposition testimony. The Court thus agrees with Defendant that the transfer was not an adverse employment action.

The loss of sales leads and management's differential correction by management could, however, be adverse employment action. But the alleged kickback scheme, even if

---

[51] Mount Aff. (Dkt. 22-3), at 2, ¶ 9.

[52] Pl.'s Resps. to Reqs. for Admiss. (Dkt. 22-13), at 5, Req. No. 5.

[53] Mot. for Partial Summ. J. (Dkt. 22), at 16.

it existed, is not plausibly connected to Plaintiff's sex. The BDC employees who moved the leads were women. They also moved leads from male salespersons. Plaintiff agreed that there was a financial motive. Title VII reaches conduct because of sex. It does not reach a kickback scheme that hits whoever is not paying. Nor does a male-dominated sales floor convert that scheme into sex discrimination once Plaintiff has admitted the financial motivation and that male counterparts were also affected.

But Plaintiff also claims that when Plaintiff's male coworkers complained about leads being taken from them, the managers at Orr Nissan addressed the problem and "nipped [it] in the bud," but that when she made a similar complaint, the BDC employees continued to divert her leads.[54] "An inference of discrimination can arise from an employer's favoritism toward a similarly situated employee who is not part of the protected class."[55] And employees are similarly situated "when they share a supervisor or decision-maker, must follow the same standards, and engage in comparable conduct."[56]

Plaintiff offers scant evidence to support her claim of differential correction. Only her deposition testimony supports her claim that management stopped the practice for male salespeople who complained. She has not identified a male salesperson, the complaint he made, when, to whom, and what that supervisor did, set against a comparable complaint of

[54] Pl.'s Dep. (Dkt. 22-2), at 170:10–171:13.

[55] *Ibrahim v. Alliance for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021) (citation omitted).

[56] *Id.* (citations omitted).

hers that the same supervisor ignored. A general statement that men were treated better is not enough to establish that a *similarly-situated* male counterpart was treated better by management. Plaintiff has failed to produce evidence from which a reasonable jury could find differential correction that was motivated by sex.

Plaintiff's remaining claim that she lost sales leads in ways other than the kickback scheme similarly suffers from a lack of competent supporting evidence. She has not identified admissible evidence from which a reasonable jury could find that any diversion outside the kickback scheme was *because of* her sex. And while she alleges that her complaints about these "stolen" leads were ignored, she has not identified any similar complaints made by male counterparts that were addressed differently by management.

So too for her claims that she was occasionally assigned tasks not assigned to male salespeople and that she wasn't allowed on the sales floor until she had passed her Nissan salesperson exam. Plaintiff has not shown that any of those things were anything more than short, ordinary alteration of duties or that they left her worse off as to pay, schedule, status, prestige, or concrete job opportunities. Not every unwanted assignment affects a term or condition of employment, and while Plaintiff need not show that she was significantly harmed by these things, she must still come forward with evidence of *some* harm, and here, she has not.

**A. Defendant's Non-Discriminatory Reasons**

Alternatively, even if Plaintiff had established a prima facie case of sex discrimination, Defendant has offered legitimate, non-discriminatory reasons for any adverse employment actions. Defendant reiterates that the kickback scheme was financially motivated and the "stolen" and diverted leads were just the product of aggressive salespeople seeking to increase their sales, and that, says Defendant, has nothing to do with Plaintiff's sex (particularly when male salespeople also had their leads diverted). As to the transfer, Defendant offers that Plaintiff was asked to transfer to the new position because she had good customer service skills that made her a good fit for the position.

**B. Pretext**

Plaintiff has also not offered evidence to support a jury finding that Defendant's proffered non-discriminatory reasons are pretextual. Plaintiff argues pretext only as to the transfer. Assuming the transfer was adverse, Defendant's explanation—that it offered a customer-facing role because of her customer-service skills—is legitimate. A four-month gap after the June 24, 2023 report does not make that explanation so incoherent, weak, inconsistent, or contradictory that a rational factfinder could find it unworthy of belief.[57]

**II. Plaintiff's Retaliation Claim**

[57] *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006).

A plaintiff bringing a Title VII retaliation claim must show that "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action."[58]

Plaintiff's retaliation claim, as briefed, rests on the transfer to the service department. She admitted that she voluntarily accepted that transfer.[59] That admission is conclusively established unless withdrawn,[60] and Plaintiff has not moved to withdraw it. Later testimony that her supervisor asked more than once, that she felt obligated, and that she nevertheless "made the decision on [her] own,"[61] does not withdraw the admission, and importantly, does not squarely contradict it. She also acknowledged that her supervisor never threatened adverse employment action if she refused the transfer.

A transfer Plaintiff conclusively admitted she accepted voluntarily is not a materially adverse action. An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[62] A move the employee accepted of her own accord is not such an action. Even if the voluntarily-

---

[58] *Davis v. Unified Sch. Dist.*, 750 F.3d 1168, 1170 (10th Cir. 2014) (citations omitted).

[59] Pl.'s Resps. to Reqs. for Admiss. (Dkt. 22-13), at 5, Req. No. 5.

[60] Fed. R. Civ. P. 36(b).

[61] Pl.'s Resps. to Interrogs. (Dkt. 22-7), at 22, Interrog. No. 16.

[62] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted).

accepted transfer were an adverse employment action, Plaintiff has not produced evidence from which a reasonable jury could infer that the transfer occurred because of her sex.[63]

**III. Plaintiff's FMLA Interference Claim**

To prevail on an interference claim, Plaintiff must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights."[64] She argues that RSV was a serious health condition and that Defendant interfered by failing to tell her she was eligible for leave.[65] Her evidence is a December 30, 2022 doctor's note excusing her "until signs and symptoms are resolved and she is feeling better."[66]

But a serious health condition requires inpatient care or continuing treatment.[67] Continuing treatment by incapacity requires more than three consecutive, full calendar days and either two in-person treatments within 30 days or one treatment that results in a regimen of continuing treatment.[68] Plaintiff has shown neither. Waiting to feel better is not,

---

[63] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

[64] *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (alterations adopted) (citation omitted).

[65] Plaintiff's Complaint originally asserted that she qualified for sick leave when she sought breast-augmentation surgery in December 2022, but Plaintiff now relies solely on her RSV illness as a basis for her FMLA claim.

[66] Doctor's Note (Dkt. 33-11).

[67] 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113(a).

[68] 29 C.F.R. § 825.115(a).

by itself, a regimen of continuing treatment.[69] She therefore was not entitled to FMLA leave, and a failure to give an eligibility notice did not interfere with a right she had.

In the alternative, Plaintiff has shown no prejudice. She does not contend the absence was denied, that she was disciplined, that she lost pay, or that she was not restored to her job.[70]

***Conclusion***

Accordingly, the Motion for Partial Summary Judgment (Dkt. 22) is **GRANTED**. Plaintiff's Title VII sexual-harassment claim, which was not a subject of the Motion, remains pending.

**IT IS SO ORDERED** this 16th day of October 2026.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

[69] 29 C.F.R. § 825.113(c).

[70] *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002).